# SCHUYLER NATIONAL BANK v. GADSDEN.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 50.  Argued November 3, 1903.—Decided December 7, 1903.

Where usurious interest has been paid to a national bank the remedy afforded by sec. 5198, U. S. Revised Statutes, is exclusive and is confined to an independent action to recover such usurious payment. *Hazeltine* v. *Central National Bank,* 183 U. S. 118.

A claim that usurious interest has been paid on a debt to a national bank secured by mortgage on real estate given by the debtors to an individual for the benefit of the bank cannot be asserted under the state law in foreclosure proceedings in the state courts.

Where the state law does not forbid an agent from taking security for the benefit of a principal the taking of real estate security by the president of a national bank for a debt due to the bank is in legal effect the taking of such security by the bank itself.

The provisions of the United States statutes forbidding the taking of real estate security by a national bank for a debt coincidently contracted do not operate to make the security void but simply subject the bank to be called to account by the government for exceeding its powers. *Logan County* v. *Townsend,* 139 U. S. 67.

On August 8, 1890, George Thrush, one of the defendants in error, being indebted to the Schuyler National Bank, one of the plaintiffs in error, for money then and theretofore lent, executed a note to the bank for the sum of $5000, payable six months after date. As collateral security for the payment of this note, Thrush and his wife executed a note and mortgage for $5000 to one Sumner, who was at that time the president of the bank. The collateral note and mortgage were delivered to the bank and by it retained. The note made to the bank was renewed by the bank from time to time, and various payments of interest and on account of the principal were made to the bank, the principal sum thereby being reduced in March, 1894, to $3000. In that month and year a new note was executed to the bank for the principal sum then due and interest, in all, $3229. No money dealings were had at any time between either Thrush and his wife and Sumner individually.

James Gadsden, one of the defendants in error, sued Thrush and his wife in a Nebraska court to foreclose an asserted mortgage on real estate. Junior encumbrancers of record were made parties defendant, among them being Sumner, to whom the mortgage for $5000, securing the collateral note previously referred to, had been executed. He answered, and by cross-petition asserted the lien of the mortgage, which he alleged was made to him as trustee, for the benefit of the Schuyler National Bank; he prayed foreclosure of such lien and the payment of the indebtedness to the bank, stated to be $3229 and interest. The Schuyler National Bank was subsequently made a party defendant; and, by answer and cross-petition, claimed the benefit of the mortgage to Sumner, securing the indebtedness just stated, and joined in the prayer for foreclosure. Separate answers, similar in tenor, were filed on behalf of Thrush and his wife, in which were averred, in numerous paragraphs, many payments to the bank of usurious interest during a period of five years, and in substance it was prayed that the amount of such payments might be deducted

from the principal sum claimed by the bank to be due. In each of the answers was contained the following paragraph:

"That the said note of $5000 of the defendants George Thrush and Mattie N. Thrush, together with the mortgage securing the same, were not executed and delivered to said William H. Sumner upon any consideration whatsoever, but the same are simply held by said defendant as collateral security to the amount owing by the defendant, George Thrush, on the said indebtedness now being evidenced by said $3229 note, in this, that the said note of $5000 and the mortgage securing the same were executed and delivered by this defendant and Mattie N. Thrush to said Sumner for the purpose that said Sumner might protect therewith said bank on account of the indebtedness of said George Thrush to said bank, and said note and mortgage were accepted by said Sumner with the knowledge and consent of said bank, and because said bank refused to take said mortgage and said Sumner in nowise protected said loan or advanced any money thereon and at the time of the maturity thereof, by virtue of the premises and the payments of usurious and illegal interest made thereon, as aforesaid, there was due and owing, after deducting the payments made upon the principal and the said payments of usurious interest, the small balance, to wit, of $252.20, and for the aforesaid balance the said defendant Sumner is entitled to a lien upon said premises under and by virtue of said mortgage and promissory note of $5000."

A reply was filed to these answers. It was therein stated in substance that most of the alleged usurious interest had been paid to the bank more than two years before the commencement of the action, and that the remaining interest payments were not in excess of the rate allowed by law to be contracted for. The pleading concluded with the claim "that this court has no jurisdiction in this action to consider the question raised in said answer to each and every item of interest mentioned in said answer as paid to said Schuyler National Bank; that said items are not proper items of set-off or counter-claim and can-

not be adjudicated except in a suit brought expressly for that purpose under the provisions of section 5198 of the Revised Statutes of the United States."

A decree was entered determining the priority of liens between the respective lienholders and providing for a foreclosure. Among other things it was adjudged that the mortgage to Sumner was executed and delivered for the benefit of the bank, and that the bank was entitled to the proceeds of the note and mortgage. As to the defence of usury set up in the answers it was decided that, as the transaction was one with a national bank, it was governed by the laws of the United States, and, therefore, recovery by way of set-off of the usurious interest alleged to have been paid was refused. Recovery of the interest embraced in the claim of the bank was, however, denied, and judgment was entered only for the principal sum found to be due and owing to the bank.

On appeal, the Supreme Court of Nebraska reversed the judgment of the District Court in the particular just noticed, and remanded the cause with directions "to ascertain the amount of money advanced to Thrush by the Schuyler National Bank, deduct therefrom all payments, whether of principal or interest, and award foreclosure for the remainder, if any." 56 Nebraska, 565. On a rehearing, the appellate court reaffirmed its previous decision. 58 Nebraska, 340. Thereupon a writ of error was allowed from this court, which was subsequently dismissed for want of jurisdiction. 179 U. S. 681. Subsequently the state District Court entered a judgment in conformity with the mandate of the Supreme Court of Nebraska, and such judgment was affirmed on appeal. 63 Nebraska, 881. The present writ of error was thereupon allowed.

*Mr. Charles J. Phelps* for plaintiff in error:

The penalties imposed by §§ 5197, 5198, U. S. Rev. Stat., are exclusive. *F. & M. Bank* v. *Deering*, 91 U. S. 29. A national bank may take real estate for a past due debt; *State Nat.*

*Bank* v. *Flathers*, 45 La. Ann. 75; or present or future debts; *Winton* v. *Little*, 94 Pa. St. 64. No one but the government can complain. *Bank* v. *Whitney*, 103 U. S. 99; *Union Nat. Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Haire*, 36 Iowa, 443; *Swope* v. *Leffingwell*, 105 U. S. 3; *Reynolds* v. *National Bank*, 112 U. S. 405; *Fortier* v. *National Bank*, 112 U. S. 439; *Wheney* v. *Hale*, 77 Missouri, 20. The debt is the claim, the mortgage is a mere incident. *Webb* v. *Hoselton*, 4 Nebraska, 318.

Estoppel must be pleaded. *B. & M. R. Co.* v. *Harris*, 8 Nebraska, 140. To constitute equitable estoppel it must appear the facts were known to the party against whom it is urged and unknown to the party urging it. *Nash* v. *Bakes*, 58 N. W. Rep. 706; Bigelow on Estoppel, 570, 669 *et seq.*

In *Haseltine* v. *Bank*, 183 U. S. 118, it was held that usurious interest could not be set off in an action on the note.

*Mr. George H. Thomas* and *Mr. Frank Dolezal* for defendants in error submitted:

There is no Federal question. Under the facts in this case the remedy for usury paid is not under the Federal but the state statute. *Exeter National Bank* v. *Orchard*, 39 Nebraska, 485.

By the Federal statute, a national bank is forbidden to loan money on real estate security. While this inhibition will not invalidate a mortgage on lands given to such a bank nor prevent its foreclosure, and the Federal government alone may forfeit the charter of the bank, it certainly will not be questioned, however, that it is the duty of the bank to honestly observe this inhibition; that it is the duty of the courts to so construe the statute that an honest observance will be compelled. In addition to the plain legal phase of this case, it seems equally plain that the bank should be so held, that when the government brings process to enforce the statute the bank cannot evade it by proving that it took no mortgage on land, and where the State as to that very mortgage, attempts to enforce its remedy for usury say that it is protected by a privilege

given by the very statute which it violated, and under'which it claimed as against the government it did not act. · A construction of the statute which would permit such double dealing is not to be seriously considered as proper in a court of justice. ·

MR. JUSTICE WHITE, after making the foregoing statement, delivered.the opinion of the court.

The question for decision is, Did the Supreme Court of Nebraska rightly .decide that the controversy concerning usurious interest paid was to be governed by the statute of Nebraska on that subject and not by the laws of the United States on the same subject, as expressed in section 5198 of the Revised Statutes? We say this is the sole question, because it is undoubted that if the rights of the parties are to be determined by the laws of the United States, the ruling below was wrong. This results from the prior adjudications of this court holding that where usurious interest has been paid to a national bank, the remedy afforded by section 5198 of the Revised Statutes is exclusive, and.is confined to an independent action to recover such usurious payments. *Haseltine* v. *Central National Bank,* 183 U. S. 132, and cases cited. If, on the other hand, the controversy is governed by the local law of Nebraska, then the construction and application of that law made by the court of last resort of the State is binding.·

In fact, this is not controverted and could not be, since the Supreme Court of Nebraska conceded that if the contention as to usurious interest ought to he determined by the laws of the United States, the conclusion which the court reached was erroneous. That court, however, held that the rights of the parties were to be measured by the law of the State instead of the law of the United States, because the collateral mortgage was not made, *eo nomine,* to the bank, but to an individual. This view was deemed to be fortified by the suggestion that, as the collateral note was secured by mortgage on real estate,

it could not under the laws of the United States have been lawfully made in favor of a national bank. The collateral note and mortgage, it was, therefore, intimated must be assumed to have been executed to an individual to avoid the effect of the laws of the United States and the consequent knowledge which would have been conveyed to the proper officers of the United States that the bank was violating the law.

The reasoning by which the judgment of the Supreme Court of Nebraska was controlled is, in our opinion, erroneous. The court did not hold that, because the collateral mortgage was taken in the name of an individual, it could not be enforced by the bank under the law of Nebraska, but simply held that, although it was enforceable by the bank, the remedy as to the usurious interest was governed exclusively by the state law, upon the theory that the transaction was not with the bank. But the usurious interest had all been paid, not to the individual upon the collateral note, but to the bank upon the principal obligation held by it. It was this interest so paid to the bank on the principal note held by it which was in effect imputed so as to fix the amount due. The result of this was to treat the transaction as an individual one in order thereby to exclude the law of the United States, and then at once to treat it as a bank transaction for the purpose of ascertaining and imputing the sums of usurious interest which had been paid. This was to administer the rights of the parties upon distinct and wholly inconsistent theories. Either it was an individual transaction or it was not. It could not in reason have been at one and the same time both the transaction of the bank excluding the individual and a dealing between individuals excluding the bank. As the usurious interest for which a remedy was afforded had been paid to the bank, in dealings by the bank with its debtor, and as the necessary effect of the judgment below was to reduce the debt due to the bank by allowing the imputation of the sum of the usurious interest, we are of opinion that the controversy was governed by the laws of the United States and not by the law of the State of Nebraska.

Nor do we think the suggestions made in the opinion of the court below respecting the power of a national bank under the laws of the United States to accept real estate security operate in any way to modify the conclusion we have just expressed. It is not contended that under the law of Nebraska an agent, acting in his own name, may not take security for the benefit of a principal, or that there is or could be any valid statute of the State of Nebraska discriminating against national banks, and depriving them of the benefit of transactions so consummated. This being true, it follows that the taking of real estate security by the president of the bank in his individual name, for the benefit of the bank, was in legal effect but the taking of security by the bank itself. Now it is no longer open to controversy that the provisions of the statutes of the United States forbidding the taking of real estate security by a national bank for a debt coincidently contracted do not operate to make the security void, and thus enable the individual who has contracted with the bank to defeat recovery, but simply subject the bank to be called to account by the government for exceeding its powers. In *Logan County* v. *Townsend*, 139 U. S. 67, the rule on this subject, as settled by the previous authorities, was thus stated by the court, speaking through Mr. Justice Harlan (p. 76):

"In *National Bank* v. *Matthews*, 98 U. S. 621, it appeared that a national bank loaned money upon the security of a note and a deed of trust of lands, both of which were assigned to it. The statute declared that a national banking association could loan money 'on personal security,' and could purchase, hold and convey real estate for certain named purposes, 'and for no others,' among which was not included the securing of a present loan of money by a deed of trust or mortgage on real property. The court, while assuming that the statute, by clear implication, forbade the bank from making a loan on real estate, refused to restrain the bank from enforcing the deed of trust. The decision went upon these grounds: That the bank parted with its money in good faith; that the question as to the viola-

tion of its charter, by taking title to real estate for purposes unauthorized by law, could be raised only by the government in a direct proceeding for that purpose; and that it was not open to the plaintiff in that suit, who had contracted with the bank, to raise any such question in order to defeat the collection of the amount loaned. If any doubt existed as to the scope of the decision in that case, it was removed by *National Bank* v. *Whitney,* 103 U. S. 99, where it was held that the right of a national bank to enforce a mortgage of real estate taken by it to secure indebtedness then existing, as well as future advances, could not be questioned by the debtor, and that a disregard by the bank of the provisions of the act of Congress upon that subject only laid the association open to proceedings by the government for exercising powers not conferred by law."

It follows from the foregoing reasons that the Supreme Court of Nebraska erroneously determined the rights of the parties by the rule of the state law, when it should have applied the law of the United States.

*The judgment of the Supreme Court of Nebraska is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE BROWN, with whom was MR. JUSTICE BREWER, dissenting.

I am constrained to dissent from the opinion of the court in this case.

The facts, concisely stated, are as follows: George Thrush executed a note to the bank for $5000, payable in six months. At the same time Thrush and wife executed a collateral note and mortgage for the same amount to Sumner, president of the bank. This note and mortgage, given partly for an antecedent and partly for a contemporaneous debt, were delivered to the bank and retained by it.

The note made to the bank was renewed from time to time,

and various payments of interest and principal were made, and the principal sum thereby reduced, in March, 1894, to $3000. At that time a new note was executed to the bank for the principal sum due and interest, namely, $3229.    No dealings were had at any time between Thrush and wife and Sumner individually.

Suit having been begun by Gadsden to foreclose a prior mortgage, and Sumner having been made a party as junior encumbrancer, he answered, and by cross petition asserted the lien of the mortgage, which he alleged was made to him as trustee of the bank.    The bank being also made defendant, filed an answer and cross-petition, claiming the benefit of the mortgage to Sumner.

It is clear that there was but one actual debt.    The question is, whether, in asserting its right to foreclose the mortgage made to Sumner individually, it must not submit itself to the laws of the State affecting usury; in other words, whether, in the fore-closure of a mortgage created under the laws of a State and executed by one citizen of a State to another, its obligations are to be determined by state law or Federal law.    Congress forbids such a mortgage; the State permits it.    There can be no doubt that the bank caused the mortgage to be given to Sumner on account of the law forbidding national banks from receiving security by way of mortgage upon real estate, and to obviate any difficulties which might be interposed either by the mortgagor or by the government, by taking the mortgage in the name of the bank.

Had the mortgage expressed upon its face the exact truth, namely, that it was given for the benefit of a national bank, and partly, at least, for the security of a contemporaneous debt, it would have fallen within the ban of the Federal statute. It is true the state law permitted it, but accompanied it with a forfeiture of the entire interest if usury were taken.    The question is whether, in enforcing this mortgage, which the bank was prohibited from taking in its own name, it may claim an exemption from the usury laws of the State.    So long as the

dealings were solely between the bank and Thrush, and payments were made upon the bank note in question, the transaction with regard to usury was governed by the Federal law. But in case the bank elected to foreclose the mortgage, I think it took the benefit of it *cum onere*. He who seeks equity must do equity. It could not take the benefit of the mortgage to Sumner, and claim a right to foreclose for the amount due without at the same time admitting that the payments which had been made were made upon a debt secured by the mortgage, and subject to the disability of the state law. As was justly said by the Supreme Court of Nebraska: "It would be highly unconscionable to permit a person to give a contract a false form to evade the burdens which would follow from its true expression, and then permit him to show the truth as against the form to evade the burdens caused by a contract in the form which has been so chosen." The bank ought not to be permitted to blow hot and cold in the same transaction. If it claimed the benefit of a mortgage made to an individual, it should take it with such burdens as would rest upon it if the transaction had originally been what it was represented to be upon its face. The opinion of the court suggests an easy method by which the prohibition of the Federal statute against the lending of money upon real estate security may be successfully evaded without the slightest danger to the bank.