A. L. LURIA, *Plaintiff in Error*, vs. BANK OF CORAL GABLES, a Florida Corporation, *Defendant in Error*.

142 So. 901.

En Banc.

Opinion filed July 14, 1932.

Petition for rehearing denied October 18, 1932.

176

*Ross Williams* and *Groman & Rapoport*, Attorneys for Plaintiff in Error;

*Paul D. McGarry, John J. Lindsey* and *J. C. Sullivan,* Attorneys for Defendant in Error.

DAVIS, Commissioner.—The plaintiff in error, whom we will hereafter refer to as the plaintiff, instituted an action at law against one E. A. Fowler and the Bank of Coral Gables, a Florida corporation. It is alleged in the declaration, in substance, that Fowler on March 1st, 1927, being indebted to the plaintiff, as one transaction constituting a composite liability, did make and deliver to the plaintiff six first mortgage deeds, each securing the sum of Five Thousand ($5000.00) Dollars, and each of said sums being represented by four promissory notes in the sum of Twelve Hundred Fifty ($1250.00) Dollars each; that on March 3rd, said mortgages were duly recorded; that on March 15th, 1927, Fowler and his wife conveyed the land described in said mortgage deeds, by a warranty deed to the Bank of Coral Gables, and that the said deed was accepted by the said bank; that said deed contained the following provision:

"This conveyance is made subject to encumbrances of

record to be assumed and paid by the Grantee herein when legally due and demandable,'' and that by reason thereof the said bank became responsible for the payment of said obligations as the same became or shall become legally due and demandable; that the maker of said notes defaulted in the payment of semi-annual interest after September 1st, 1927, and that it is provided in each of said notes and also in said mortgages that if the same have to be collected upon the demand of an attorney, the maker thereof is to pay attorney's fees reasonably incurred or paid at any time by the mortgagee; that the plaintiff has placed the said obligations in the hands of attorneys for collection and that by reason thereof, the defendants are also indebted to plaintiff for reasonable attorney's fees as aforesaid. The said notes and mortgages were attached to and made a part of the declaration, and the mortgages contained a clause providing for the acceleration of all payments, in the event of non-payment of any of the sums falling due within thirty days after said payments severally became due and payable. The cause was dismissed without prejudice, as to the defendant, E. A. Fowler. The Bank of Coral Gables interposed pleas to the declaration in substance as follows:

(1) That it never promised as alleged.

(2) That it did not make, execute, issue or assume the said obligations and indebtedness.

(3) That the deed described in the declaration was never delivered to said bank, or to any person authorized to receive it on behalf of said bank.

(4) That the said bank never accepted the said deed, nor was it ever accepted on behalf of said bank by any person authorized to accept it.

(5) That it does not now, nor has it at any time had or claimed any right, title, claim, interest, lien or

demand in, to, against, or upon the lands described in the declaration, and that no consideration or thing of value ever passed or moved from the plaintiff, or any other person to said bank, by reason whereof said bank should assume or become obligated for the payment of said indebtedness.

(6) That on the 2nd day of March, 1927, an agreement was made and entered into between the plaintiff and Coral Gables Corporation, pursuant to which the lands mentioned in the declaration were conveyed by the plaintiff to one E. A. Fowler, as the nominee, agent and/or trustee of the plaintiff and the Coral Gables Corporation, and as a part of the agreement, by which said lands were so conveyed to Fowler, as such nominee, agent and/or trustee, the said Fowler gave to the plaintiff the said notes and mortgages with the agreement nevertheless, that Fowler in the execution of said notes and mortgages, was acting only as the nominee, agent and/or trustee, as aforesaid, for the purpose of taking and holding the legal title to said lands, and that said notes and mortgages were and at all times should be and remain the obligations of the said Coral Gables Corporation, the payment of which the said Coral Gables Corporation by said agreement assumed and guaranteed; that at the time of the execution of said mortgage deeds, Fowler was an officer of said bank, acting in a fiduciary capacity and relationship to said bank, its stockholders, depositors and other creditors; that Fowler on or about the said 2nd day of March, without authority from said bank or anyone authorized to act for it, undertook to execute to said bank a warranty deed conveying said lands, and that the attempted execution of said deed was but an effort on the part of Fowler to divest himself of the legal title thereto, but that the delivery of said deed was never effected and the recordation thereof

was never made known to said bank, or to any person through and by whom knowledge or notice of the recordation of said deed could be imputed to; said bank; that no consideration therefor was ever paid by the bank, or anyone in its behalf, and that the acts and doings of Fowler in so signing, acknowledging and recording said warranty deed in the name of the bank was unauthorized and contrary to any power or authority in him vested and imposed, and that Fowler's act in recording the deed was in violation of his instructions and contrary to his duties.

(7) That at the time of the delivery of the said notes and mortgages, there did not exist any obligation or indebtedness from Fowler to the plaintiff, nor did any consideration or thing of value pass from the plaintiff, or any person whomsoever, to Fowler; that Fowler was acting not in his individual capacity, but merely as a receptacle for the legal title to said lands, and as a conduit, agent or attorney for the execution of said notes and mortgages under and by virtue of a contract then existing amongst Fowler, the plaintiff and the Coral Gables Corporation, which contract was in writing and under seal and duly executed by the plaintiff and the said Coral Gables Corporation, and wherein it was stipulated and agreed that said notes and mortgages were not the obligation of Fowler but were and should at all times remain the primary and direct obligation of the Coral Gables Corporation, and by reason thereof, Fowler was not on March 1st, 1927, or at any time thereafter, indebted to the plaintiff in the said sum of $30,000.00, or in any other sum.; that the mortgage deeds and promissory notes described in the declaration were never the obligation of Fowler, and that the said bank did not and cannot assume a non-existent obligation.

(8) That the said bank being engaged in the business of

a banking company, is prohibited from making any contract or assuming any undertaking to become surety or guarantor for the debt or default of another, and is likewise prohibited from purchasing, holding or conveying real estate for any purpose other than such as may be necessary for immediate accommodation in the transaction of business, or such as may be conveyed in the satisfaction of debts previously contracted in the course of business dealings, or such as shall be purchased at sale under judgments, decrees, or mortgages taken by or assigned to such company, or purchased to secure debts due to such company, and that said bank was not then and had never been indebted to the plaintiff in any manner or in any sum whatsoever; that said lands were not then and never were necessary for the bank's immediate accommodation in the transaction of business; that they were not conveyed to said bank in satisfaction of any debts previously contracted, and that said lands were not purchased at any sale under judgment or decree, or mortgage taken by or assigned to said bank, or to secure any debt due to said bank, and that the attempted conveyance of said lands to said bank was *ultra vires* and beyond the power of said bank to consummate contrary to public policy, and in violation of the statutes of the State of Florida in such cases made and provided.

Replications were filed by the plaintiff.

Upon a trial of the cause, a verdict was returned in favor of the plaintiff. Thereupon, a motion for a new trial was made by the Bank of Coral Gables, which said motion was granted by the Court and the cause is now here for review upon a writ of error from the order granting a new trial.

The evidence reveals that the plaintiff held notes of the Rapid Building Company, a corporation, in the aggregate sum of $90,000, which were secured by mort-

gages on certain property in Coral Gables; that the Coral Gables Corporation held second mortgage liens on the property to secure sums aggregating $30,000; that the Bank of Coral Gables held unsecured notes of the Rapid Building Company and Atlantic Coast Builders, as makers, in the sum of $15,000; that the Rapid Builders Company defaulted in certain payments due plaintiff, who instituted foreclosure proceedings, which cause was dismissed upon the plaintiff and Coral Gables Corporation reaching an amicable adjustment upon the following terms: the plaintiff agreed to surrender his notes and release his first mortgages for said sum of $90,000, upon the payment of $10,000 in cash by the Coral Gables Corporation, and the receipt of a mortgage executed by Fowler and wife upon the same property, securing the sum of $30,000 and that he would look to the Rapid Building Company for $15,000. Coral Gables Corporation agreed to pay to the plaintiff the said sum of $10,000, and to cancel its second mortgages upon the property. This plan contemplated the deeding of the property by Rapid Building Company to E. A. Fowler, as nominee for Coral Gables Corporation, who was to be the "straw man for them," and who in turn was to give the plaintiff his notes (those in suit) for $30,000, secured by mortgages on the property. This agreement was reduced to writing and put into effect. According to the testimony of Julius M. Rapoport, the lawyer who represented plaintiff in the compromise settlement, he "permitted Coral Gables Corporation, instead of paying me the balance of the $15,000 consideration, to pay it to the Bank of Coral Gables so that it might be secured for these worthless notes (of Rapid Building Company and Atlantic Coast Builders), which they (the bank) held." The notes of Rapid Building Company and Atlantic Coast Builders which were held by the said bank were

surrendered and said corporations were discharged from those obligations. The agreement in writing, which was entered into by the plaintiff and Coral Gables Corporation, shows that Fowler took title to the land for the benefit of Coral Gables Corporation, and that the plaintiff accepted the mortgages and notes of Fowler "in lieu of the mortgages and notes of the Coral Gables Corporation;" that the Coral Gables Corporation guaranteed the payment of the above notes and mortgages in accordance with the tenor thereof, with the same force and effect as though Coral Gables Corporation were the mortgagor and maker of the said notes," and that it agreed further to indemnify and save harmless the plaintiff against loss "that may accrue to him by virtue of any default by Fowler," and in the event of default, upon written notice, it would purchase from the plaintiff, "by adequate assignment, such mortgage." The agreement also gave to the Coral Gables Corporation an option to purchase any or all of said notes and mortgages "upon payment therefor of the balance of principal and interest" due thereon.

Fowler was cashier and executive vice-president of the bank. He did not pay any consideration for the deed to him. He did not exhibit the deed to any superior officer of the bank or to one having authority equal to his. He was not at the time indebted to plaintiff. No entry of the transaction was made on the minute book of the Board of Directors of the bank, though he had discussed the transactions with the members of said board. He had not, however, discussed with them the assumption of the mortgage he had given to the plaintiff. The then president of the bank had never seen the deed, before the time of the trial, did not authorize Fowler to execute it in that form, and during the period of his incumbency of that office, it had never

been brought to his attention that "this deed had been executed to the bank containing this assumption clause," although he had authorized the general terms of the paper.

While the motion for a new trial was predicated upon a number of grounds, it is apparent from the order that the Court in granting the motion was influenced to so act for one or more of the following reasons:

(1) That the bank was not bound by the covenant of the deed binding it as grantee to pay encumbrances of record.

(2) That the property described in the deed was not conveyed for any of the purposes mentioned in the statute (Sec. 6068, Compiled General Laws of Florida, 1927) and it was, therefore, void.

(3) That the bank's participation in the transaction, if it did participate therein, was nothing more than a lending of its credit without sanction of law.

The arguments presented here in written briefs deal principally with those questions, but they also raise minor questions.

If for any reason, the order was proper, it must be affirmed.

It is settled here that where a grantee knowingly accepts a deed which contains a clause binding him to assume the payment of mortgage debt upon the land conveyed, he becomes the primary obligor. Brownson vs. Hannah, 93 Fla. 223, 111 So. 731; 51 A. L. R. 976; Slottow v. Hull Inv. Co., 100 Fla. 244, 129 So. 577; Ex. Nat. Bank vs. Clark-Ray-Johnson Co., 95 Fla. 734, 116 So. 647; Ackley v. Noggle, 97 Fla. 643, 121 So. 882; Realty Holding Co. vs. Noggle, 97 Fla. 643, 121 So. 883; Whitfield vs. Webb, 100 Fla. 1619, 131 So. 786.

And the mortgagee is entitled to maintain an action at law in his own name directly against the grantee to recover the amount of the indebtedness. It is not necessary that he proceed against the security in the first in-

stance. 1 Wiltsie on Mortgage Foreclosure, 4th Ed., Sec. 250.

If the title was in Fowler and he was liable to the plaintiff for the debt, and the deed was delivered to and knowingly accepted by the bank, and the bank had the power to accept such deed, this case would be controlled by Realty Holding Co. v. Noggle, 97 Fla. 643, 121 So. 883. This last cited case was an action at law by a mortgagee against a grantee upon a contract of assumption to which the mortgagee was not a formal party, and it was held that the action could be maintained, not upon principles of subrogation, which is an equitable doctrine, but upon the principle that where two parties make and intend a contract for the benefit of a third, the latter may enforce those provisions designed primarily for his benefit.

But "a grantee is not conclusively bound by an assumption clause in a deed even as against the mortgage (mortgagee) or other third parties. He may show the real contract between the parties, though in contradiction of the assumption clause. And parol evidence is admissible. An agreement to assume is subject to any defense that would exist between the original parties." 1 Wiltsie on Mortgage Foreclosure, 4th Ed. page 329.

"Where the mortgagee seeks to hold the grantee of the mortgaged premises personally liable, such grantee may deny on the foreclosure of the mortgage, that he assumed the payment of the mortgage debt or any part thereof, and that he is personally liable. And where the deed makes the grantee liable for the mortgage debt, he may set up in defense and show by parol, that the deed under which he holds does not express the contract of the parties." 1 Wiltsie on Mortgage foreclosure, 4th Ed., page 350.

One of the questions raised and insisted upon by the defendant in error is that Fowler was not personally liable for the payment of the obligations held by the plaintiff, and that where there is no liability on the part

of a mortgagor to a mortgagee for a mortgage assumed by a subsequent grantee of the mortgagor, such assumption of the mortgage does not create a personal liability enforceable by the mortgagee against such grantee. This is an interesting question upon which the courts are divided (See annotation 12 A. L. R. 1532, 1537). We do not feel that we are called upon to settle it because under the evidence adduced in this case, personal liability did attach to the mortgagor. Neither the instruments themselves nor the signatures show that Fowler signed for or on behalf of anyone else. He may, therefore, be held personally liable for the debt represented by the notes signed by him as maker. Sec. 6780, Compiled General Laws of Florida, 1927; 8 C. J. 157; 2 C. J. 676; 3 R. C. L. 1093.

Trustees and other fiduciaries may exempt themselves from personal responsibility by using explicit words to show such intention, but in the absence of such words, they are held bound. Robinson vs. Springfield Co., 21 Fla. 203, 224-5. See also Falsten Realty Co. vs. Kirksey, 103 Fla. 280, 137 So. 267.

It is also contended by the defendant in error that the bank cannot be held liable for the payment, notwithstanding its assumption of the debt, because it took only a defeasible title. In support of this contention it is argued that the title conveyed to Fowler by Rapid Building Company was a defeasible title; that Coral Gables Corporation was the real debtor to the plaintiff, Luria; that the Bank of Coral Gables extinguished an obligation to it of the face value of $15,000.00 and lent an additional sum of $10,000.00 to Coral Gables Corporation, for neither of which sums was any note or other evidence of indebtedness given, and that when Fowler conveyed the property to the bank, the deed operated as a mortgage and conveyed only a defeasible title. The argument of the defendant in error is not sustained by the

evidence. It is not shown how the $15,000.00 debt of Rapid Building Company and Atlantic Coast Builders to the bank was extinguished, whether by payment or otherwise. There is nothing before us to show that Fowler was indebted to the bank. The evidence does not provide a basis for the contention that the deed from Fowler to the bank should be construed to be a mortgage, conveying merely a defeasible title to secure a debt, but it clearly appears that he took title to the property as the agent or trustee of the Coral Gables Corporation, with the knowledge and consent of the plaintiff, and with the understanding and agreement by the plaintiff and Coral Gables Corporation that he, Fowler, would execute and deliver his notes to the plaintiff for the sum of $30,000.00, secured by a mortgage on the property. There is nothing on the face of the instrument vesting title in Fowler, indicating that the property was to be held by him as trustee. He, therefore, in dealing with persons without notice of the trust, had the same power as if he was the holder of the equitable as well as of the legal title. 26 R. C. L. 1296.

This brings us to a consideration of whether or not the bank could take title to the property.

In Section 6068 (4137) Compiled General Laws of Florida, 1927, it is provided that banking companies may purchase and hold real estate for the following purposes and no other:

"1. Such as may be necessary for its immediate accommodation in the transaction of its business.

2. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

3. Such as it shall purchase at sale under judgments, decrees or mortgages taken by or assigned to the company, or shall purchase to secure debts due to it."

The proof shows that the property was not acquired

for either of the purposes enumerated in the statute. Both parties seem to assume here that the Coral Gables Corporation was indebted to the bank in the sum of $25,000, and that the deed from Fowler conveyed an indefeasible title in satisfaction of a debt due the bank, or if not that, it conveyed a defeasible title as security for a debt. Prior to the transaction, Rapid Building Company and Atlantic Coast Builders owed $15,000 to the bank, but when the compromise settlement was consummated this debt was extinguished, and the notes were surrendered. How it was extinguished we are not advised. It does not appear upon what terms the bank lent $10,000 to Coral Gables Corporation, how it was evidenced or whether or not it was secured. If the deed from Fowler to the bank was executed for the purpose of securing that sum, it should have been shown in evidence and not left to conjecture. A written instrument executed by Coral Gables Corporation and Fowler which would tend to throw light upon the matter was offered in evidence by the plaintiff but rejected by the Court upon objections of the defendant. There was nothing before the jury to show that the deed to the bank was anything other than what on its face it purports to be—a conveyance of an indefeasible title to the property. It is obvious that the deed was not executed for either of the purposes enumerated in Section 6068, Compiled General Laws of Florida, 1927.

But does it follow that the defense of ultra vires can be interposed by the bank in a proceeding of this character? In Lassiter vs. Taylor, 99 Fla. 819, 128 So. 14, 69 A. L. R. 689, we quoted with approval language of the Supreme Court of California in Berka vs. Woodward, 125 Cal. 119, 57 Pac. 779, 45 L. R. A. 420, 73 A. S. R. 31, to the effect that when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted acts growing out of it. This

principle was again approved by this court in Citizens Bank & Trust Co. vs. Mabry, 102 Fla. 1084, 136 So. 714, where it was held under the provisions of Section 6068, Compiled General Laws of Florida, that a bank or trust company is prohibited from either directly or indirectly investing its funds in the capital stock of any other corporation except a Federal Reserve Bank of this district, and that it is immaterial whether a bank has acquired stock of another bank by direct purchase or by reason of having accepted it as security for a loan, the act of the bank was *ultra vires* and void, and the liquidator of the bank whose stock was acquired cannot enforce the payment of a stock assessment made by the comptroller on the capital stock so held by the bank acquiring it. This Florida case is sustained by decisions of the Supreme Court of the United States, in cases of the same character, cited by the court. Furthermore, the Supreme Court of the United State has repeatedly held that ''a contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as it could be done consistently with adherence to law, by permitting property or money parted with on the faith of the unlawful contract to be recovered back, or compensation to be made for it.

''In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract.'' Central Trans. Co. vs. Pullman Pal. Car Co., 139 U. S. 24, 35 L. ed. 55; Citizens Central Nat.

Bank vs. Appelton, 216 U. S. 196, 54 L. ed. 443; Pullman Car Co. vs. Cent. Tr. Co., 171 U. S. 138, 43 L. ed. 108, Merchants Nat. Bank vs. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; U. S. vs. St. Nat. Bk., 96 U. S. 30, 24 L. ed. 647.

Section 6068 (4137) Compiled General Laws, 1927, unquestionably prohibits, by implication, the purchase of real estate, except for the purposes therein mentioned. And yet, under a Federal statute containing like provisions, the Supreme Court of the United States in Kerfoot vs. Farmers & M. Bank, 218 U. S. 281, 54. L. ed. 1042, 31 Sup. Ct. Rep. 14, said:

"Although the statute by clear implication forbids a National bank from making a loan upon real estate, the security is not void, and it cannot be successfully assailed by the debtor or by subsequent mortgagees because the bank was without authority to take it and the disregard of the provisions of the Act of Congress upon that subject only lays the bank open to proceedings by the Government for exercising powers not conferred by law."

In Thompson vs. St. Nicholas Nat. Bank, 146 U. S. 240, 36 L. ed. 956, 15 Sup. Ct. Rep. 66, the Court in its opinion stated:

"it has been held repeatedly by this Court that where the provisions of the National Banking Act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties. Union Nat. Bank of St. Louis v. Matthews, 98 U. S. 621 (25: 188); National Bank of Genesee v. Whitney, 103 U. S. 99 (26: 443); First Nat. Bank of Xenia v. Stewart, 107 U. S. 676 (27: 592)."

The leading case with regard to the doctrine that we are now considering is Union Nat. Bank vs. Matthews, 98 U. S. 621, 25 L. Ed. 188, where, in referring to the implied prohibition of the clause of the statute which au-

thorizes a loan of money on personal security, it was observed that the statute does not declare such a security void but is silent upon the subject; that, if Congress so meant, it would have been easy to say so; and that it was hardly to be believed that this would not have been done instead of leaving the question to be settled by the uncertain results of litigation and judicial decision. In summing up its conclusions, the Court said:

"We cannot believe it was meant that stockholders and perhaps depositors and other creditors, should be punished and the borrower rewarded, by giving success to this defense whenever the offensive fact shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by Congress.

"That has been always, the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly, usurp this function of the Government."

See to same effect Logan County Nat. Bank vs. Townsend, 139 U. S. 67, 35 L. Ed. 107, 11 Sup. Ct. Rep. 496, and Schuyler vs. Gadsden, 191 U. S. 451, 48 L. Ed. 258.

A case more in point with the instant case is Baker vs. Schofield, 221 Fed. 322, in which the Circuit Court of Appeals of the 9th Circuit applies the principle stated in Union Nat. Bank vs. Matthews, supra, and the latter cases which we have cited. It is difficult (quite impossible for the writer of this opinion) to reconcile the doctrine enunciated by Union Nat. Bank vs. Matthews, supra, and other Federal cases of similar import with the rule of law that no action can be maintained upon a contract which the Legislature has prohibited, either expressly or by implication, and which seems to have found favor in this court in Citizens Bank & Trust Company vs. Mabry, supra. Even the effect of the high tribunal that

gave to us the doctrine of Union Nat. Bank v. Matthews., supra, and National Bank vs. Whitney, 103 U. S. 99, 26 L. Ed. 443, to distinguish those cases from the class of cases represented by Citizens Bank & Trust Company vs. Mabry, is disappointing, if not unsatisfactory. For instance, in California Nat. Bank vs. Kennedy, 167 U. S. 362, 42 L. Ed. 198, 17 Sup. Ct. 831, it says:

> "The difference between those cases (National Bank vs. Whitney and Union Nat. Bank vs. Matthews) and one like this was referred to in McCormick vs. Market Nat. Bank, 165 U. S. 538, and it is therefore unnecessary to review them,"

while in McCormick vs. Market Nat. Bank it is said that Union Nat. Bank vs. Matthews and Nat. Bank vs. Whitney depend upon that provision of the U. S. Rev. Stats. which says, "the purpose for which a national bank might purchase, hold and convey real estate, which as construed by the Court, did not make void mortgages taken for other purposes by a banking association authorized to transact business." Indeed, as aptly stated in the annotation captioned "how far a private corporation is estopped from raising the defense of ultra vires in an action brought against it." L. R. A. 1917A, 749, 888; "It (U. S. Supreme Court) seems to have reached a doctrinal impasse of such a nature that, in order to harmonize its decisions, it must either explicitly relegate the national bank cases to a separate and distinct catagory, or abandon, in respect to other cases, the clear, simple, and logical theory that an ultra vires contract is absolutely void, and consequently cannot, as a general rule, become enforceable through the operation of an estoppel." We, of course, do not have to follow the doctrine laid down by the Supreme Court of the United States in Union Nat. Bank vs. Matthews, but if we do not our action may result in giving to us one rule to be applied in cases where national banks are interested, and

another rule for state banks, for in Schuyler Nat. Bank vs. Gadsden, 191 U. S. 541, 48 L. Ed. 258, upon writ of error to the Supreme Court of Nebraska, the judgment was reversed because the Nebraska Court determined the rights of the parties by the rule of the state law, when it should have applied the law of the United States. In case last cited, a question similar to the one that we have been considering was involved. Realizing that the law should apply to all alike, we, therefore, are disposed to put such bank cases as are similar to the instant case, in a class or "category" to themselves, and hold that the deed to the Coral Gables Bank is not void. If it is not void, it follows that the Plaintiff had the right under the rule stated in recent decisions of this court to enforce the agreement of the Bank of Coral Gables to pay the debt secured by the mortgages held by the plaintiff, provided there is no other reason why it should not be enforced.

The evidence in this case shows that the deed to the bank was executed by one who was its executive vice-president and cashier; that no one else connected with the bank in an official capacity had seen the deed or had actual knowledge of an agreement made by anyone on behalf of the bank to pay the encumbrances, until just prior to October 17, 1928, when, at a regular meeting of the Board, the directors of the bank passed a resolution condemning and repudiating the act of Fowler in executing and recording the said deed, disclaiming any interest in the lands thereby conveyed, and authorizing the president to execute and deliver such deed or deeds as "may be necessary to divest the bank of all right, title and interest in and to the said lands as and when the same shall be required by any court of competent jurisdiction or will be accepted by the said A. L. Luria in full release and discharge of any obligation by virtue thereof."

Officers of a bank, because of their fiduciary character, are required to act with the utmost good faith, and they are forbidden to deal in or handle the funds or property of the bank for their own advantage. 3 R. C. L. 465. See also Chipola Valley Realty Co. vs. Griffin, 94 Fla. 1151, 115 So. 541; Jacksonville Cigar Co. vs. Dozier, 53 Fla. 1059, 43 So. 523.

The burden rests upon one who seeks to hold a corporation liable for an act, or on a contract, of an officer or agent to show that the doing of the act or the execution of the contract was duly authorized, or that it was properly ratified. E. O. Painter Fer. Co. vs. Boyd, 93 Fla. 354, 114 So. 444. See also Chipola Valley Realty Co. vs. Griffin, supra, 14 A. C. J. 112, 115 and 120.

There was a total failure of proof upon the question of authority to take over the property by, or to accept a deed conveying it to the bank, Fowler, being the grantor, could not act in the transaction for both himself and the bank, but having done so without authority, the provisions of the deed will not bind the bank unless its acceptance was ratified by it. 7 C. J. 541, 547, 552.

The same general principles which govern the ratification of an unauthorized act or contract of an agent for a natural person, govern a corporation. As a general rule where a corporation takes and retains the benefits of an unauthorized act or contract on its behalf by an officer or agent, it thereby ratifies and becomes bound by such act or contract, together with all the liabilities and burdens resulting therefrom, provided it has full knowledge of all of the material facts relating to the act or contract. 14 A. C. J. 372, 374, 386 and 387.

There was proof before the Court to show that the bank had collected rents, had spent several thousand dollars in improving the property and had paid taxes

thereon; but the proof of such facts are not sufficient to show a ratification of Fowler's act in conveying the property to the bank with a clause in the deed binding the bank to pay encumbrances thereon. Knowledge on the part of the bank that it was holding a deed containing a clause binding upon it to pay encumbrances was an important element and should have been established by evidence. Fowler, being individually interested in the transaction, his knowledge may not be imputed to the bank, since his interest is best served by concealing it. *7 C. J. 535.* Nor is the bank to be charged with constructive knowledge of the covenant in the deed binding it to assume and pay the encumbrances upon the property. Our recording statute (Sec. 5698, Compiled General Laws, 1927) requires deeds to be recorded to be effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, and was never intended to affect the rights of anyone else. The record of a deed is notice only to those who are bound to search for it, to creditors and those who have subsequently acquired some interest or right in the property under the grantor or mortgagor. Neas vs. Whitener-London Realty Co., 119 Ark. 301, 178 S. W. 390, Ann. Cas. 1917 B. 780, L. R. A. 1916A, 525; Lynchburg P. Bldg. Co. vs. Fellers, 99 Va. 337, 31 S. E. 505, 70 A. S. R. 851; Davis vs. Monroe, 187 Pa. St. 212, 41 Atl. 44, 67 A. S. R. 581; Blake vs. Graham, 6 Ohio St. 580, 67 A. D. 360; Ocobock vs. Baker, 52 Neb. 447, 66 A. S. R. 597; 23 R. C. L. 211.

Inasmuch as it was shown in evidence that the bank, prior to its repudiation of the deed, was without knowledge of the clause therein binding it to pay encumbrances, the Court committed no error in granting the motion for a new trial. The order of the lower Court is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court and the foregoing opinion prepared under Chapter 14553, Acts of 1929, Extra Session, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the order of the lower Court be, and the same is hereby affirmed and the cause is remanded with directions to proceed in accordance with law.

BUFORD, C.J., AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS AND TERRELL, J.J., not participating.

---

### ON PETITION FOR REHEARING.

DAVIS, Commissioner.—A petition for rehearing was filed in this case, and among the reasons urged for a rehearing, it is said: (1) that the opinion clearly predicates its affirmance on the assumption that the bank had repudiated the deed, and that the Court overlooked and failed to consider the fact that the bank's minutes tendered in evidence were not admitted by the Court; (2) that the Court predicated its opinion in part on a plea that had gone out on demurrer, which plea alleged that the bank did not make, execute, issue or assume the obligation. Upon another inspection of the transcript, we find that the minutes containing a resolution of repudiation of the contract, though copied, in the transcript, were not permitted to go to the jury. However, the testimony of Fowler and of one T. H. Tumlin, who succeeded Fowler as cashier of the bank, makes it plain that there is nothing in the minutes of the Board of Directors to show an approval or ratification of the deed from Fowler to the bank. But for the oversight, the Court would have made no reference to the passage of a resolution condemning and repudiating the act of Fowler in executing and recording the said deed, and yet it would have come to the

same conclusion. The affirmance of the judgment was not predicated on the assumption that the bank had repudiated the deed. The plaintiff failed to sustain the burden of showing a ratification of the deed by the bank with knowledge on the part of the bank that it contained a clause binding upon the bank to pay encumbrances on the property that it purported to convey.

It is a fact that a demurrer to the plea referred to in the petition was sustained by the lower Court, but a casual inspection of other pleas that were permitted to remain in the record, which are set out in the opinion of this Court, will be sufficient to show that any fact that could have been received in evidence by virtue of such a plea, if it had not gone out on demurrer might have been received as evidence under other pleas in the case. While under the circumstances it was improper to recite the plea in the opinion, the judgment of this Court was not affected thereby, nor is the opinion different from what it would have been with no such recital.

In this case the transcript contains pleas that were held by the lower Court to be bad as well as those that were held to be good. It also contains proffered testimony that was rejected, as well as that which was admitted in evidence. Under such circumstances it is sometimes a tedious undertaking for one to cull out from the mass of matter before us only that which should be considered. The writer of the opinion in this case fully realizes that he is possessed of his share of the frailties that afflict his kind, hence it is not surprising to him, though regrettable, when mistakes of the character pointed out herein are brought to his attention.

We find no merit in the other grounds set out in the petition for a rehearing. The petition is denied.

PER CURIAM.—The petition for rehearing having been considered by the Court and the foregoing opinion pre-

pared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered and ordered by the Court that the petition for rehearing be and the same is hereby denied.

BUFORD, C.J., AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.