**LANGHAM'S ESTATE v. AMERICAN NAT. BANK OF BEAUMONT, TEXAS, et al.**

No. 12052.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1948.

Rehearing Deneid March 12, 1948.

R. F. Roberts, of Beaumont, Tex., for appellants.

John D. Rienstra and Will E. Orgain, both of Beaumont, Tex., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

On the 20th of April, 1925, J. B. Langham, in consideration of the sum of $52,-500.00 in cash and the agreement of the grantee to pay, for a period of ninety-nine years, a monthly rental of not less than $500.00, executed to The City National Bank of Beaumont, a deed, or ninety-nine-year lease, to certain lots in the City of Beaumont. The Bank, as a part of the consideration, also covenanted, within thirty-five years, to replace the building then on the property or to build a new one so that the premises upon reversion and surrender would be a four-story building. The Bank also agreed to pay all taxes and to maintain fire and tornado insurance on the premises in an amount not less than $35,000.00. A failure to make the payments, pay the taxes, or to keep insurance, or to perform any obligation assumed under the conveyance for a period of six months after becoming due conferred upon the grantors an option to terminate the grantee's rights upon giving appropriate notice. The right to sublet or assign was conferred, and a vendor's lien to secure the performance of the grantee was retained.

The grantee took possession of the premises and used same as its banking house until the 5th of April, 1932, during which time it complied with its obligations under the conveyance. But at that time The City National Bank of Beaumont, the grantee, being financially insecure, but not insolvent, entered into a consolidation

agreement with The American National Bank of Beaumont. This consolidation agreement was under the authority of the Boards of Directors of both banks and with the approval of the Comptroller of the Currency who issued a certificate of consolidation to The American National Bank of Beaumont on June 15, 1932. The property embraced in the conveyance from Langham to The City National Bank did not become the property of The American National Bank upon consolidation, but it was included in a trust deed to secure the consolidated bank against default in the fulfillment of the obligations of the Trustee of The City National Bank in the consolidation agreement. Prior to January 13, 1936, this trust deed, which had been executed by The City National Bank to W. L. Pondrom, as Trustee, was in default, and in order to save foreclosure, and the expenses attendant thereupon, Pondrom, the Trustee, on January 13, 1936, conveyed the property covered by the Langham deed, and all rights of The City National Bank thereunder, to The American National Bank in satisfaction of the unpaid part of the indebtedness secured by said trust deed, but that Bank has never used the premises as its banking quarters.

On December 13, 1934, some two years before the conveyance of the Langham premises to The American National Bank, Pondrom, as Trustee for The City National Bank, executed a fifteen-year lease of the premises to J. C. Penney Company by lease duly recorded on January 31, 1935. Since the lease to J. C. Penney Company had not expired, it, The American National Bank of Beaumont, and certain directors of the bank and individuals, were made defendants in this suit by the Independent Executors and Trustees of the Estate of J. B. Langham, wherein it was contended that since the premises in question were not being used in the banking business of either of said banks since the consolidation, the ownership was beyond the powers of The American National Bank, and its assumption of the lease and the obligations thereunder was void, and that the lease should be canceled and an accounting rendered.

It appears that upon the consolidation of The City National Bank with The American National Bank an effort was made by the latter to get J. B. Langham to cancel the ninety-nine-year lease, but he refused and insisted that the consolidated bank was liable for all obligations under the lease since the consolidated bank had expressly assumed the liabilities of The City National Bank. During the entire period from the date of the lease until the bringing of the suit, the covenants and obligations to the grantor, Langham, were kept and performed either by The City National Bank or the Trustee, Pondrom, or The American National Bank until plaintiffs declined to accept the rentals as and when tendered for the month of March, 1946, and thereafter. The American National Bank continued thereafter to tender the monthly payments. At the time of the consolidation of the banks in 1932 there was little rental demand for the Langham properties but since the entry of the J. C. Penney Company into the premises the rental value has trebled. It also appears that neither The City National Bank, its Trustee, The American National Bank, nor J. C. Penney Company, has defaulted in any substantial particular in any of their respective covenants. The plaintiffs did not offer to pay back the cash consideration of $52,500.00 paid by The City National Bank to Langham upon the execution of the deed.

The Court below found that the taking of the mortgage by The American National Bank from Pondrom, as Trustee, in protection of its debt, and the subsequent acceptance of the deed from Pondrom, as Trustee, to the Bank of the Langham properties in protection of the Bank and in satisfaction of the obligations due it were not ultra vires and void; that even if the acts of The American National Bank as alleged by the plaintiffs were in violation of Sec. 29 of Title 12, U.S.C.A.,[1] 44 Stat.

---

[1] Sec. 29, Title 12 U.S.C.A., is as follows:

"§ 29. Power to hold real property

"A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

"First. Such as shall be necessary for

1227, or any other section of the National Banking Act, such transactions were not void but voidable, to which only the sovereign can object. The facts as found by the Court below are without serious dispute, and we think its conclusions that if the acts complained of were ultra vires they are merely voidable and not void, and being such only the United States could complain thereof, are in accord with the great weight of the applicable decisions. See National Bank v. Matthews, 98 U.S. 621, 25 L.Ed. 188; Schuyler National Bank v. Gadsden, 191 U.S. 451, 24 S.Ct. 129, 48 L. Ed. 258; Kerfoot v. Farmers' and Merchants' Bank, 218 U.S. 281, 31 S.Ct. 14, 54 L.Ed. 1042; Frank et al. v. Giesy, 9 Cir., 117 F.2d 122. Whatever breaches, if any, were occasioned in reference to the payment of rent and maintenance of insurance, were breaches procured by, or brought about by, the plaintiffs, when they sought to vary the course of conduct followed by the parties for many years. The Court below was correct in holding that the defendants were not in default.

Notwithstanding the seventy "Plaintiffs' Objections to Findings of Fact and Assignments of Error Thereon" and the twenty-nine points projected into their brief, the plaintiffs' whole case stands or falls on the question of whether or not the acquisition and holding of the Langham premises by The American National Bank is void or voidable, and whether even if the acts are ultra vires a cause of action would accrue therefrom to the plaintiffs. We think that the answer of the lower Court that the acts in question were merely voidable and, therefore, questionable only by the sovereign settles the whole case.

The findings of fact of the lower Court were supported by substantial evidence and its conclusions of law by the great weight of authority. The judgment is correct and is hereby affirmed.

its accommodation in the transaction of its business.

"Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

"Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

"Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it.

"But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."