STENECK TRUST COMPANY, IN CHARGE OF FRANK H. SMITH, COMMISSIONER OF BANKING AND INSURANCE, UNDER THE PROVISIONS OF "AN ACT CONCERNING TRUST COMPANIES" (REVISION OF 1899), PLAINTIFF-RESPONDENT, v. JOHN MINERVINI AND CATHERINE MINERVINI, DENFEDANTS-APPELLANTS.

Submitted February 16, 1934—Decided April 12, 1934.

For the plaintiff-respondent, *John H. Sheridan.*

For the defendants-appellants, *Sylvan S. Cohen.*

The opinion of the court was delivered by

CASE, J.   The appeal is from a judgment in the Hudson County Circuit Court entered upon a verdict in favor of the plaintiff directed by Judge Brown.   Defendants appeal alleging error in the direction.

The Steneck Trust Company, a corporation, was organized under the provisions of an act entitled "An act concerning trust companies (Revision of 1899)," 4 *Comp. Stat., p.* 5654.   After the transaction sued upon, but before the suit was begun, the commissioner of banking and insurance had, under the authority of that act, taken possession of the property and business of the company.   The suit is for the collection of a promissory note given by the defendants to the company.   It is admitted that the plaintiff, if entitled to anything, is entitled to the amount of the judgment, namely, $5,185.45.

It is said on behalf of the appellants, however, that the note was given for the purchase price of certain shares of capital stock of the plaintiff company, that those shares of stock were held by the bank as collateral security for the payment of the note and that the jury should have been permitted to determine the fact thereon because the transaction, if found to be as alleged, was in violation of section 18 of the cited statute, which provides:

"No trust company shall make any loan on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall within one year from the time of its purchase be sold or disposed of at public or private sale; provided, that nothing in this section contained shall apply to any loan made before the passage of this act."

It is further contended that if the arrangement was, in effect, the making of a loan by the trust company upon the security of its own shares, the whole transaction, including the note sued upon, was *ipso facto* void.

The trial judge considered, first, that the stock was simply being withheld from delivery until paid for and, second, that if there had been a violation of the statute such violation was to be noticed only by the state and did not constitute a defense to an action on the note.

The evidence would support a finding that the trust company did make sale of certain of its own shares to the defendant, John Minervini, and that the note sued upon was in payment therefor; that the certificate for the shares was duly executed; that an instrument, in form and by specific wording a pledge "as collateral security," was executed and delivered by John Minervini to the trust company and was held by the latter together with, and with respect to, the certificate for the shares of stock; and that an officer of the bank stated to Minervini and another that the stock was to be, and was being, held by the company as collateral to the note. If it were material—which for reasons following we

find it was not—to determine the "collateral" aspect of the stock, the question would have been one of fact for the jury. But the only force in establishing a violation of the statute depends upon sustaining the further proposition that such a violation inherently voided the note.

John Minervini bought the stock. It was made out in his name, became his; and was so entered in the company's stock books. All increment in value was his profit; the earnings were his. He received his dividend check regularly every three months from the time of the purchase in March, 1928, until 1931. Then came reverses. The bank was closed; dividends ceased; the stock depreciated in value. But defendants never undertook to void the transasction. They claim they did not have to, that it was void from the beginning; and therein, as we think, they are mistaken.

The statute contains many commands and prohibitions. To some of these, penalties are attached—the imposition of a fine, or the declaration of a misdemeanor or of a high misdemeanor with consequent punishment. Some, including those within section 18, are attended by no specific penalties. But all are subject to such general penalization as is included within the purview of section 22 as amended by *Pamph. L.* 1913, *ch.* 171; 2 *Cum. Supp. Comp. Stat., p.* 3750, §§ 221, 222: "Whenever it shall appear to the commissioner of banking and insurance that any trust company has violated its charter or any law of this state * * * the commissioner may forthwith take possession of the property and business of such trust company * * *," and of section 23 as amended by *Pamph. L.* 1913, *ch.* 171; 2 *Cum. Supp. Comp. Stat., p.* 3754, §§ 221, 223, which provides for other action by the commissioner if it shall appear that any trust company has violated its charter or any law of this state binding upon it. The grounds upon which the commissioner took possession of the property and business of the Steneck Trust Company do not appear in the record, but the very fact of the exercise of authority illustrates the power and the readiness of the government to interrupt and, if necessary, to terminate a banking business that is not conducted in ac-

cordance with the law. We find, then, that the prohibition is attended by a form of retributive punishment, and it has been held that in such a case the statute is to be examined as a whole to find out whether the legislature meant that a contract in contravention should or should not be void. *Harris* v. *Runnels,* 53 *U. S.* 79; 13 *L. Ed.* 901.

In searching for the legislative purpose we find nothing to suggest that section 18 is to protect the one who seeks to borrow on bank stock collateral any more than that section 18 is to benefit the bank attache who would obtain a concealed loan or who would overdraw his account. The purpose, we believe, is to protect the depositors and shareholders of the bank. The fallacy, as a banking operation, of the loaning of money upon the bank's own stock as collateral and the danger of it to the depositor are apparent. The ill results of the practice extend to the general body of stockholders. The protection of a borrower at the expense of those interests would, it seems to us, work in precisely the opposite direction from the purpose of the statute. *Union National Bank* v. *Matthews,* 98 *U. S.* 621; 25 *L. Ed.* 188.

There is no proof that the shares sold to Minervini were other than theretofore unissued stock which the company had the lawful right to sell. The company was in the banking business; it was authorized to loan upon promissory notes. *Pamph. L.* 1920, *ch.* 27, § 1; *Cum. Supp. Comp. Stat.,* §§ 221-6a. Therefore it could loan to the Minervinis upon their promissory note. Had the transaction stopped there, it would have been legal. The illegality of the collateral arises from a legislative purpose quite separated from any desire to relieve the borrower.

The general rule, stated by this court in *Brooks* v. *Cooper,* 50 *N. J. Eq.* 761, 771, is that all agreements in contravention of statutes are void. Our Supreme Court more recently applied the rule in *Lehigh Valley Railroad Co.* v. *United Lead Co.,* 102 *N. J. L.* 545. See, also, *Harris* v. *Runnels, supra.* But the rule has been modified to fit particular cases, especially those arising under the banking laws. In *Union National Bank* v. *Matthews, supra,* the United States Su-

preme Court held that a violation of the prohibition in the federal statute against the making of loans by national banks on real estate security did not void such a transaction and that the offensive act was subject only to complaint by the government. That holding was clarified and sustained in *National Bank of Genesee* v. *Whitney,* 103 *U. S.* 99; 26 *L. Ed.* 443, as well as in *Logan County National Bank* v. *Townsend,* 139 *U. S.* 67; 35 *L. Ed.* 107 (at *p.* 111), and in *Schuyler National Bank* v. *Gadsden,* 191 *U. S.* 451; 48 *L. Ed.* 258. The suggestion by Mr. Justice Story in *Fleckner* v. *Bank of United States,* 8 *Wheat.* 338; 5 *L. Ed.* 631, that the violation of a statutory prohibition against certain banking practices would not make a forbidden transaction *ipso facto* void unless the statute should so provide but would only subject the corporation to the application of governmental remedies was restated by Mr. Justice Field and followed in the National Bank of Genesee case, *supra.* *Thompson* v. *St. Nicholas National Bank,* 146 *U. S.* 240; 36 *L. Ed.* 956, 961, applied the same principle to certifications of checks done in violation of the statute. It was said in *First National Bank of Xenia* v. *Stewart,* 107 *U. S.* 676; 27 *L. Ed.* 592, in passing upon a provision of the Federal Banking act that is identical with our own section 18, that (italics mine):

"While this section, in terms, prohibits a banking association from making a loan upon the security of shares of its own stock, it imposes no penalty, either upon the bank or borrower, if a loan upon such security be made. *If, therefore, the prohibition can be urged against the validity of the transaction by anyone except the government, it can only* be done before the contract is executed, while the security is still subsisting in the hands of the bank. It can then, *if at all,* be invoked to restrain or defeat the enforcement of the security. When the contract has been executed, the security sold, and the proceeds applied to the payment of the debt, the courts will not interfere with the matter."

The italicized words indicate a doubt as to whether a transgression against the statute could ever be set up by the bor-

rower against the enforcement of the prohibited security. The decision does not support the contention of appellants, by whom it is cited. Moreover that suit was to recover in damages for the alleged conversion of the stock by the bank. It did not go into the question of the voidness, or even of the voidability, of the original debt or of the promissory note given thereon. In *Utica Insurance Co.* v. *Scott,* 19 *Johns.* 1, it was suggested by the court that although a certain security—a promissory note—was by statute declared null and void, nevertheless the lending of money was not so declared and therefore the loan might be recovered. In the instant case no controversy is waged over the ownership, possession, transfer, or right to the proceeds of, or to any equity in, the capital stock. The suit is on the note. The subject of capital stock arises out of the contention that the taking of it by the bank as collateral voided the note. *Young* v. *Vough,* 23 *N. J. Eq.* 325, a Chancery decision cited by appellants, turns upon fraud and upon a by-law bearing upon the transfer of bank stock. It is not in point, as also *McCormick* v. *Market National Bank,* 165 *U. S.* 538; 41 *L. Ed.* 817, is not. The latter case involved the obligation of a contract made on behalf of a bank before its incorporation was completed and before it was authorized to transact business.

We conclude that it was not the intention of the legislature that the taking by a trust company of its own stock as collateral should so vitiate a transaction otherwise legal as to make void *ab initio* a promissory note given for a valid consideration. The attempted defense was not an answer to plaintiff's suit. Verdict for the plaintiff was properly directed.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—PERSKIE, VAN BUSKIRK, JJ. 2.