JOHN J. CARLIN, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. PHILIP O'CONNOR, JAMES O'CONNOR AND THOMAS O'CONNOR, INDIVIDUALLY AND AS CO-PARTNERS TRADING AS O'CONNOR BROTHERS, DEFENDANTS-APPELLANTS.

Submitted October 25, 1940—Decided January 28, 1941.

For the plaintiff-respondent, *Charles Hood* (*Harry Shaffer,* of counsel).

For the defendants-appellants, *Nicholas S. Schloeder.*

The opinion of the court was delivered by

WELLS, J. This is a suit for the payment of a premium for a surety bond furnished the defendants through the plaintiff company. The bond was issued in a regular form for the faithful performance of the defendants in connection with a contract for scavenger service and removal of garbage and ashes which the defendants had entered into with the Village of South Orange. This bond was to run for three years at an annual premium of $2,250. Work under the contract began March 1st, 1940, and as far as the record is concerned still continues. Defendants refused to pay the first year's premium and plaintiff brought this suit to recover the same. Defendants set up in their answer the defense that the contract between defendant and the Village of South Orange was illegal by reason of its failure to comply with the provision of *R. S.* 34:10-1 and that the bond and agreement to pay the premium was tainted with the same illegality and therefore null and void.

Upon motion to strike the answer, the trial court sitting as a Supreme Court Commissioner, ordered the same stricken as insufficient in law and directed the plaintiff to proceed as for want of an answer. At the same time, the defendants made an application to file a third separate defense setting up a compromise and settlement of the claim which concerned matters subsequent to the institution of suit and the filing of the answer. The court denied this application on the ground that the proof in support thereof did not establish an agreement to compromise which would result in an accord and satisfaction. Judgment was therefore entered in favor of the plaintiff in the amount of $2,388.47. It is from this judgment that the defendants appeal.

The first paragraph of *R. S.* 34:10-1 provides:

"All contracts made by or on behalf of the state or any county or municipality for the performance of work or the furnishing of material shall provide that the mechanics, workers and laborers while engaged in such work shall work no more than eight hours in any one day. It shall be unlawful for any state, county or municipal officer to make any such contract without such provision. It shall be unlawful for

any employer or other person to require or permit any mechanic, workman or laborer to work more than eight hours per calendar day, in doing such work or furnishing such material."

The act, after making additional provisions regarding working hours and wages for those employed on public works, provides that any official, or any contractor with a public body, or a person working under such a contractor, who violates the terms of the act shall, upon the complaint of the Commissioner of Labor, be adjudged a disorderly person and be subject to a fine of not less than $50 and not more than $175, or by imprisonment for not more than six months, or both in the discretion of the court. The act requires that complaints be made by the commissioner before a court of competent jurisdiction within six months of the date of the alleged violation.

The contract entered into between defendant and the Village of South Orange did not contain a provision that "the mechanics, workers and laborers while engaged in such work shall work no more than eight hours in any one day."

Defendants contend that this omission renders the entire contract illegal and that under the circumstances the defendants are not obligated to pay any premiums for a bond guaranteeing the performance of the illegal contract.

Plaintiff denies the illegality of the contract and furthermore argues that even assuming its illegality, such constitutes no defense to the plaintiff's action.

"Generally a statute other than one merely intended to protect the revenue, which imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it void, renders an agreement founded on such act illegal and void, but the rule has been widely held to be dependent on a determination of whether the legislature did or did not intend to imply a prohibition or to render the prohibited act void." 17 *C. J. S. No.* 202 (at *p.* 557); see, also, 12 *Am. Jur. No.* 161 (at *p.* 656); *Restatement of the Law of Contracts No.* 580 (1) and (2) (*c*).

However, to call a contract illegal is not to state the effects of such illegality. In this connection, Professor Williston in his treatise on Contracts, # 1630, points out:

"It is commonly said that illegal bargains are void. This statement, however, is clearly not strictly accurate. It is more correct to say that 'a party to an illegal bargain generally can neither recover damages for breach thereof, nor, by rescinding the bargain, recover the performance thereunder, or its value' * * * When relief is denied it is either because plaintiff is a wrongdoer, and such a person the law does not aid, or, in exceptional cases, because the transaction is declared void by law. * * * It will be observed that Lord Mansfield rests the denial of recovery on an illegal bargain upon the illegality of the plaintiff's conduct, not the nature of the transaction. * * * To go farther and assert that all unlawful agreements are *ipso facto* no contracts and void is opposed to many decisions and unfortunate in its consequences for it may protect a guilty defendant from paying damages to an innocent plaintiff. * * * Not only is the word 'void' one of indefinite and misleading import, but even to call a bargain illegal does not define the consequences."

To determine the effects or consequences of the illegality, the legislative intent must be sought. What was the mischief aimed at? What method did the legislature set up to correct this mischief? To what extent is it necessary to go in order to enforce the public policy supporting the act?

The original act was passed in 1913 and merely stated that public contracts for work or furnishing material made within New Jersey, shall "be deemed and considered as made upon the basis of eight hours constituting a day's work." See *Pamph. L.* 1913, *ch.* 253. This act was amended twice in 1932 by *Pamph. L.* 1932, *ch.* 176 and by *Pamph. L.* 1932, *ch.* 230. This last act is the same now found in the Revision of 1937 as 34:10-1. The material change made by the last act was to impose a duty upon the public body to insert an eight-hour day clause in its contracts for public work and to penalize the official who failed to do so.

The original act and its amendments have been silent as to the effect upon the contract of the failure of the public official to comply with its terms. The amendments did not affect the substance of the act but merely were attempts to secure better enforcement of its terms.

Better working conditions for labor have always been a real concern of the legislature. Such, in fact, can be said to constitute a public policy of this state. However, the expression of this public policy as found in the statute would not be served by declaring public contracts made in violation thereof void. This is not a case where the forbidden act constitutes the evil aimed at. See *Eckert* v. *West Orange*, 90 *N. J. L.* 545; 101 *Atl. Rep.* 269 (1917). Here the evil aimed at is working conditions and not insertion of clauses in contracts. The latter is merely instrumental in securing the former. It would appear that sufficient penalty is imposed to endorse observance by public officials without nullifying the contract. It must be remembered that neither plaintiff nor defendant have violated the provisions of the act and hence no public policy would be served in declaring the contract void as to them.

The Circuit Court of Appeals in *Adams Express Co.* v. *Darden*, 286 *Fed. Rep.* 61 (at *p.* 65); (*C. C. A.* (6) 1923), citing numerous cases said:

"It is now well settled that, when a statute imposes specific penalties for its violation, where the act is not *malum in se,* and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the legislative intent to render such contracts illegal and unenforceable. * * * This rule is not in conflict with, but is an exception to, the general rule that an action cannot be maintained upon an illegal contract."

Chief Justice Brogan in *Lehigh Valley Coal Sales Co.* v. *Apter*, 127 *N. J. Eq.* 125; 11 *Atl. Rep.* (2d) 77 (1940), states the applicable rule of statutory construction as follows:

"Moreover, on its face the statute is penal in its nature and statutes of this class must be strictly construed. * * * Acts imposing a penalty should not be extended beyond their precise words. Further, it is a statute in derogation of the common law and such statutes must be precisely construed. * * *"

In like vein, the District Court of the Western District of Pennsylvania in *Payne* v. *National Transit Co.*, 300 *Fed. Rep.* 411 (1921), points out:

"* * * the power of the courts to declare a contract void, as being in contravention of public policy, is a very delicate power, and should be exercised only in cases free from doubt; * * * a court cannot refuse its aid to enforce a contract on doubtful and uncertain grounds; * * * the burden is on the defendant to show that its enforcement would be in violation of settled public policy or injurious to the morals of the people."

Therefore we find that the legislature did not intend as one of the consequences of the illegal act of public officials in failing to insert an eight-hour day clause in the contract for public work to render such contract null and void. Since the contract continued in full force between the defendants and the municipality, so did the risk of the surety and hence it can be said that its premium was earned.

We have been unable to discover any cases in New Jersey interpreting the effect of this statute upon contracts made in violation thereof. However, our courts have allowed a person to recover under a contract made by him under a fictitious name, notwithstanding under the statute he was guilty of a misdemeanor for transacting business under a fictitious name without having filed the necessary certificate in the county clerk's office as required by law. *R. S.* 56:1-1. In *Rutkowsky* v. *Bozza,* 77 *N. J. L.* (at *p.* 725); 73 *Atl. Rep.* 502 (1909), this court, speaking of said statute, pointed out:

"The act does not make the contract void, but subjects the offender to indictment. It is highly penal and must be strictly construed."

To same effect see *Viracola* v. *Commissioners of City of Long Branch (Supreme Court,* 1923), 1 *N. J. Mis. R.* 200; 142 *Atl. Rep.* 252. See, also, 45 *A. L. R.* 198 for extensive annotation on this subject.

A case which does support recovery for the plaintiff is *Mizell* v. *Elmore and Hamilton Contracting Co.,* 215 *Fed. Rep.* 88 (*C. C. A.* (2) 1914). There the defendant entered into a contract for the construction of certain public roads. The plaintiff furnished the surety bond in connection therewith. Shortly thereafter the work was enjoined by a tax-

payer's suit and four years later the contract was declared invalid by the New York Court of Appeals. The defendant, through its receiver, refused to pay the premium on the ground that the contract was null and void. The court in allowing the surety to recover the premium held:

"The answer is manifest. The surety company was not required to examine into the legality of the contract. Good or bad, it was the contract which the Elmore & Hamilton Company wished guaranteed, and for this service that company was willing to pay, and agreed to pay, $469.08 per annum in advance, 'and continue the same until United Surety Company shall, in the manner provided by law, be discharged or released from any and all liability and responsibility upon and from said bond.' * * * The surety company fulfilled its obligation to the letter, it guaranteed the bond for four years and the contracting company agreed to pay the premiums for four years.

"The fact that the question of the validity of the agreement was in litigation during this period has no relevancy to any question here involved. The contracting company received the consideration for which it agreed to pay. The fact that it might have terminated its agreement to pay premiums, if it had seen fit to do so in the legal way, is of no moment, in view of the fact that it did not terminate the agreement, but insisted upon keeping it in force until the court of last resort had held the contract with the state invalid."

The Village of South Orange, in its brief which it was permitted to file as *amicus curiœ*, argues that there was no violation of the act in question for such was complied with by the inclusion in the contract of the following clause: "The entire service shall be conducted and managed subject to and in harmony with such ordinances and/or resolutions of the Village, rules of the Board of Health of the Village, the Board of Health of the State and/or other laws of the State of New Jersey, which now are or hereafter may be adopted, approved or made." Having found that the contract was sufficient to sustain the plaintiff's claim, we do not need to pass upon this point.

For the reasons given above, we are of the opinion that the

trial court did not err in striking out the answer of the defendants. We have examined the proofs offered by both parties on the application of the defendants for leave to file a third separate defense setting up accord and satisfaction and we have reached the conclusion that in the denial of this application, the trial court did not abuse its discretion.

Finally, we find no merit in defendants' contention that judgment should be entered against them jointly but not severally.

The judgment entered below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.