26 N.J. Super. 251 (1953)
97 A.2d 735
THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ARTHUR H. PADULA AND MARGARET C. PADULA, HIS WIFE, CONCETTA PADULA, VINCENT PADULA AND ALFRED L. PADULA, AS EXECUTORS OF THE ESTATE OF JAMES V. PADULA, DEFENDANTS-APPELLANTS, AND GARDEN CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1953.
Decided June 9, 1953.
*254 Before Judges GOLDMANN, SMALLEY and SCHETTINO.
Mr. Joseph A. Ward argued the cause for appellant (Mr. Charles Handler, Corporation Counsel of the City of Newark, attorney).
Mr. Daniel G. Kasen argued the cause for respondent (Messrs. Kasen, Schnitzer & Kasen, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
James V. Padula, now deceased, was the owner of a large tract of vacant land in the Ivy Hill Park section of Newark, New Jersey, consisting of about 32 acres. On March 22, 1951 his executors, the defendants Padula, conveyed a one-acre parcel out of this tract to defendant-respondent Garden Construction Co. On December 11, 1952 the City of Newark filed its complaint seeking to "enjoin, set aside and invalidate" that conveyance because the parcel formed part of a subdivision as defined in R.S. 40:55-1, as amended, the subdivision had not been approved *255 as required by R.S. 40:55-15, as amended, and hence the conveyance was invalid as to the municipality.
The Padulas answered admitting the allegations of the complaint. The answer revealed that there was an action pending in the Chancery Division by which the Padulas sought a reconveyance of the one-acre parcel because the transfer was the result of "coercion, duress and threats."
The defendant company moved to dismiss the complaint on the following grounds: (1) it failed to state a claim upon which relief could be granted; (2) R.S. 40:55-15, as amended, insofar as it was here sought to be applied, was unconstitutional in that it contravened (a) the Fourteenth Amendment to the Federal Constitution, because it constituted a deprivation of property without due process of law, (b) Article I, Section 10 of the Federal Constitution, because it impaired the obligation of contract, and (c) Article I, paragraph I of the State Constitution, because it deprived defendant company of due process of law and also impaired the obligation of its contract; and (3) the complaint failed to join indispensable parties defendant. (The last reference is to five corporate grantees to whom the Padulas had conveyed parcels of varying size subsequent to the Garden Construction Co. transfer, as well as to two mortgagees of these lands.) The Chancery Division granted the company's motion and dismissed the complaint as to it. The city appeals.
It may be observed preliminarily that the complaint is defective in several particulars. It fails to allege the appointment of a planning board by the governing body of the City of Newark (R.S. 40:55-3); there is nothing in the complaint from which it might be concluded that a master plan was prepared and adopted by the planning board (R.S. 40:55-6); nor is there any allegation that the governing body at any time authorized the municipal planning board to adopt regulations governing the subdivision of lands (N.J.S.A. 40:55-12). Borough of Oakland v. Roth, 25 N.J. Super. 32, 35-36 (Ch. Div. 1953). The deficiencies could have been cured by amendment, but none of the defendants questioned the complaint in any of these particulars *256 in the court below or here. We might properly affirm the dismissal without considering the points raised by counsel (City of Rahway v. Raritan Homes, Inc., 21 N.J. Super. 541, 543 (App. Div. 1952)), but we choose to dispose of the appeal on the merits.
It is undisputed that the one-acre plot was sold and the deed delivered without the subdivision of the original 32-acre tract having first been approved either by the Planning Board of the City of Newark  we assume the existence of such board for the purposes of this opinion  or the governing body itself. It is also undisputed that the planning board did not waive the requirements of its approval of the subdivision, nor did the governing body.
The statute in effect on the date of the delivery of the deed, March 22, 1951, was L. 1950, c. 67, § 8, effective April 25, 1950, amending R.S. 40:55-15 as it had theretofore been amended by L. 1948, c. 464, § 6:
"Any owner or agent of any owner of any land who transfers or sells any land which forms a part of a subdivision as defined in this Title, before a plat thereof has been approved by the approving agency, whether the planning board or governing body and duly recorded or filed in the office of the county clerk or register of deeds, shall forfeit and pay a penalty of not less than one hundred dollars ($100.00) for each lot or parcel so transferred or sold, * * *.
The municipality may enjoin the transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction and may recover the penalty by a civil action in any court of competent jurisdiction; provided, however, that the provisions of this section shall not apply in any case in which the planning board shall have waived the filing of a map pursuant to this section."
Thus, the only consequences flowing from non-compliance with the statute were: (1) imposition of a minimum penalty of $100 against the transferring owner or his agent, and (2) the enjoining by the municipality of the transfer, sale, or agreement of sale. Clearly, the object of the injunctive remedy was to arrest the transfer before it became an accomplished fact. Nothing in the statute as it read at the time of the deed in question purported to confer upon, or had the effect of vesting in, the municipality the right to disturb, *257 undo or vitiate an estate already vested by force of an unapproved conveyance. That omission was sought to be cured by a further amendment to R.S. 40:55-15  L. 1951, c. 213, enacted by the Legislature and effective June 13, 1951, almost three months after the conveyance from the Padulas to Garden Construction Co. By that amendment, and for the first time, the Legislature sought to invest the municipality with the right to maintain a civil action "to set aside and invalidate any conveyance made pursuant to such transfer or sale."
A feature of the case which has not escaped the attention of either counsel for defendant-respondent or the court is that for a period of more than 20 months plaintiff did nothing with regard to the conveyance in question. In the meantime five different parcels, involving over 30 acres of the original Padula tract, were respectively conveyed to five grantees without the subdivisions having been approved by the planning board or the governing body. The city has apparently taken no action whatsoever as to these transfers. It was only some time after the Padulas had brought their above-mentioned action against Garden Construction Co. seeking to set aside the conveyance here involved that the city filed its complaint. The Padulas are not in reality aggrieved by the present action, because if the city is successful, title to the one-acre plot will revert to them  as they state in their answer and as they so obviously want it to.
Incidentally, although no judgment was entered against the Padulas in the present action, they served and filed a notice of appeal which they have not pursued, and understandably so. Counsel for Garden Construction Co., in their brief as well as at the argument, suggest that the true plaintiff here is the Padula group; that the city, oblivious of the five unapproved major subdivisions, has belatedly become exercised over what, if a subdivision at all, is of minor importance and significance, and that its present action can only succeed in giving the property, not to the municipality but to the Padulas.
We need not speculate as to the motives or purposes of plaintiff municipality. Like the lower court, we confine our *258 analysis of the controversy to, and base our decision upon, the uncontroverted facts of the case. Plaintiff rested upon its complaint and introduced no proofs or evidence resisting the motion for summary judgment.
The opinion of Judge Stein in the Chancery Division set out two grounds for dismissing the complaint: (1) the act of June 13, 1951 (L. 1951, c. 213) amending N.J.S.A. 40:55-15, was operative only prospectively, and, in the alternative, (2) if the 1951 law were to be applied retroactively, it would destroy a vested estate in property, would constitute a violation of the contract clauses of both the Federal and State Constitutions and, further, would constitute a taking of property in violation of the due process clauses of both Constitutions. City of Newark v. Padula, 24 N.J. Super. 483 (Ch. Div. 1953). We agree with the conclusions reached in the trial court, but do not consider it necessary to go beyond the first of the two reasons assigned by Judge Stein in affirming the judgment of dismissal.
The amendment of June 13, 1951 is inapplicable to the deed in question. Little need be added to what the trial court has said on this point. Interpreting the 1951 amendment, the court applied the cardinal rule that words in the statute should not be given a retrospective operation unless the language be so clear, strong and imperative that no other meaning can be annexed to it, or unless the legislative intent cannot otherwise be satisfied. Nichols v. Board of Education of Jersey City, 9 N.J. 241, 248 (1952); Kopczynski v. County of Camden, 2 N.J. 419, 424 (1949); Andes v. Boyajian, 12 N.J. Super. 344, 349 (Ch. Div. 1951); Connell v. Carpenter, 9 N.J. Super. 236, 241 (App. Div. 1950); Morristown Electric Supply Co. v. State, 4 N.J. Super. 216, 220 (App. Div. 1949); 2 Sutherland, Statutory Construction (1943), § 2212, pp. 134, 135. Cf. Goff v. Hunt, 6 N.J. 600, 608 (1951), where a unanimous court held that a constitutional provision "should be given a prospective construction only, unless an intention to make it retrospective is clearly revealed in the provision itself, * * *." If *259 that be true in respect of organic law, a fortiori in the case of legislative enactment.
We agree with the trial court that the provision of L. 1951, c. 213, purporting to give municipalities, in addition to any other remedy, a right of action to set aside and invalidate a conveyance of land forming part of an unapproved subdivision, cannot and does not apply retroactively to the deed of March 22, 1951 from the Padulas to Garden Construction Co.
Plaintiff seeks to escape the force of this reasoning  as well as the constitutional barriers to its asserted cause of action that the trial judge indicated would arise were retroactive effect to be given to the 1951 amendment  by now saying that it does not rest its cause upon the June 1951 act, but stands upon the provisions of N.J.S.A. 40:55-15 as they existed March 22, 1951. The city contends that the conveyance was unlawful under the then-existing statute and that it was always the right of the municipality, without reference to or aid from the posterior amendment of June 13, 1951, to seek nullification of such a deed in equity.
This argument, first made on appeal, does not square with the cause of action exhibited by the complaint. There the plaintiff specifically relied on the statute, "R.S. 40:55-15, as amended." (Italics ours) Reference to a particular statute "as amended" is usually, and reasonably, considered as referring to the law as it stood at the time of the commencement of the action, and not to some earlier amendment which had ceased to exist. Faced with a decision which holds that L. 1951, c. 213, can have no retroactive effect, plaintiff now asserts that the words "as amended" used in its complaint "just as well refer to the 1948 amendment [sic] in effect at the time of the conveyance complained of."
Although plaintiff's argument represents a complete about-face, we shall nonetheless examine the state of the law as presently invoked by it. The statute operative at the time of the conveyance was not the 1948 amendment (L. 1948, c. 464, § 6), as plaintiff inadvertently states, but L. 1950, c. 67, § 8, quoted above. To repeat what we have already *260 said, all that the 1950 law provided was that the owner or his agent who transferred or sold land forming a part of an unapproved subdivision was subject to a money penalty, and that the municipality might "enjoin the transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction" and could also recover the penalty by a civil action in any court of competent jurisdiction. The injunctive action is the only one authorized against the grantee. Against him no penalty could be imposed, and there is nothing in the statute which declares his action in taking the deed to be unlawful or the conveyance itself void.
What could be enjoined under the 1950 act (L. 1950, c. 67, § 8) was "the transfer or sale or agreement"  language carried down from the original Planning Act of 1930 (L. 1930, c. 235, § 14). The reference is to executory conduct pointing to, but falling short of, an actual conveyance. This is made clear by the language of the 1951 amendment (L. 1951, c. 213, § 1) which gives the municipality the right "to restrain the transfer or sale or the performance of the agreement of sale and to set aside and invalidate any conveyance made pursuant to such transfer or sale." (Italics ours.) Obviously, the words "transfer or sale" did not and could not contemplate the actual conveyance, otherwise there would have been no point in or necessity for adding the above italicized language in the 1951 act. If "conveyance" were intended to be used synonymously with "transfer or sale," then all that need have been done was provide that the "transfer or sale" be set aside, not the "conveyance made pursuant to such transfer or sale." The word "conveyance" and the words "transfer or sale" are used in contradistinction. The latter can only mean the executory agreement, while "conveyance" can refer only to the executed transaction, the deed itself. It therefore follows that at the time of the deed in question the only right in the municipality was to enjoin that which was as yet unconsummated, the executory contract of sale. It was the purpose and function of the 1951 amendment to create and *261 bestow a new right, namely, that of destroying the executed contract, the deed itself.
In claiming that the Padula deed was unlawful under the 1950 act and the city could therefore, without express statutory authority, seek to set it aside, plaintiff would appear to assume that the conveyance was unlawful in the sense that certain unlawful acts are so malum in se as to be utterly void. It argues that the mere presence in the statute of a penalty provision  even though imposed against the grantor only  makes the conveyance unlawful and permits the setting aside of the grantee's deed and reinvesting the grantor with his former estate. Plaintiff finds no difficulty with this result and points to the 1951 amendment in which for the first time compensatory reparation is provided for the divested grantee. However, plaintiff may not seek support in the 1951 act while at the same time claiming, as it does on this appeal, that it does not rely upon that act and regards it as inapplicable.
Assuming that the conveyance in question constituted an interdicted act, does it follow that the deed is so tainted that defendant Garden Construction Co. should be deprived of its estate thereunder? The original Planning Act and its amendments have been silent as to the effect upon a conveyance where the grantor fails to have the subdivision approved by the planning board or governing body.
In Steneck Trust Co. v. Minervini, 112 N.J.L. 530 (E. & A. 1934), Justice Case pointed out that the earlier general rule that all agreements in contravention of statutes were void, had been modified to fit particular cases. He concluded that it was not the intention of the Legislature that the taking by a trust company of its own stock as collateral  an act prohibited by statute  "should so vitiate a transaction otherwise legal as to make void ab initio a promissory note given for a valid consideration." The mere statutory interdiction was held not to carry with it an intent to condemn and vitiate a transaction violating the statute.
The court in John J. Carlin, Inc. v. O'Connor, 126 N.J.L. 243, 247 (E. & A. 1941), held that when a statute *262 imposes specific penalties for its violation, where the offending act is not malum in se and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference will be that it was not the legislative intent to render such contracts illegal and unenforceable. This was declared to be an exception to the general rule that an illegal contract is not enforceable. The court quoted from its earlier decision in Lehigh Valley Coal Sales Co. v. Apter, 127 N.J. Eq. 125, 128-129 (E. & A. 1940), where the Chief Justice said:
"* * * Moreover, on its face the statute is penal in its nature and statutes of this class must be strictly construed. * * * Acts imposing a penalty should not be extended beyond their precise words. Further, it is a statute in derogation of the common law and such statutes must be precisely construed. * * *."
The Carlin case referred to Rutkowsky v. Bozza, 77 N.J.L. 724 (E. & A. 1909), where plaintiff, trading under a fictitious name, sued to recover for goods sold and delivered. He had failed to file with the county clerk the certificate required by the 1906 act relating to the use of fictitious trade names. The act made such failure to file a misdemeanor. The court permitted the plaintiff to recover, holding that his omission to file, even though it rendered him liable to indictment, did not render the contract void and unenforceable. It was pointed out that since the statute did not itself in express terms make the contract void, the court would not so hold.
We hold that the conveyance under consideration was not void under the 1950 statute. True, a penalty might have been recovered against the Padulas, injunction proceedings maintained against the passing of the deed, but no action could have been maintained to set aside the deed once it was given and the estate vested in the grantee. Otherwise, what reason or necessity was there for the Legislature further amending N.J.S.A. 40:55-15 in 1951 and interpolating therein a new right of action against the grantee himself? If, as plaintiff contends, the right already existed, what need was there for the Legislature to reassert it?
*263 Having seemingly abandoned reliance upon the 1951 amendment, plaintiff in its final point on appeal once again returns to that act and asserts that the amendment did not create plaintiff's right to relief or enlarge thereon, but merely regulated the remedies in respect of that right. In a word, the city contends that the amendment is procedural and that its application in the instant case is not objectionable as being retrospective. In support of that argument plaintiff cites Neel v. Ball, 6 N.J. 546 (1951). The pertinent language of the court in that case should be reproduced in its entirety. The court said (at page 551):
"Ordinarily, statutes relating to substantive rights are construed to operate only prospectively, in the absence of a clear expression of opposite intent. [Citing cases]
This is not true, however, in the construction of statutes relating solely to procedure, and they are generally held applicable to pending proceedings where such application does not have the effect of disturbing vested rights or impairing the obligations of contracts. [Citing cases] We are not unmindful of the observation, in Content v. Dalton, 122 N.J. Eq. 425 (E. & A. 1937), that courts are reluctant to give a statute retrospective operation where to do so would work an injustice, but there the determination was on a matter not of procedure but of substantive rights."
The 1951 amendment clearly is not one which concerns procedure but one which directly and vitally affects substantive rights. It purports to give to a municipality the power to wrest from one his vested estate, the benefit of which flows not to the municipality but to the grantor. Even where a statute is procedural so that it may operate retroactively, it must be purely procedural. If it is so tied up with substance as to affect adversely an existing property right or other vested right, it will not be permitted to operate retroactively. Unless it is purely procedural it is not a matter of remedy but one of substance.
The judgment is affirmed.