53 N.J. Super. 175 (1958)
147 A.2d 94
JACK TURER, PLAINTIFF,
v.
AHAVAS ACHEM ANSHE, BELLEVILLE, A RELIGIOUS CORPORATION OF N.J., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 16, 1958.
*176 Messrs. Bracken & Walsh (Mr. John J. Bracken appearing), attorneys for the plaintiff.
Messrs. Kristeller, Zucker, Lowenstein & Cohen (Mr. Milton Gurny appearing), attorneys for the defendant.
GIULIANO, J.C.C. (temporarily assigned).
On February 8, 1957 the plaintiff, Jack Turer, who was a member of the "Progress Club" (an affiliate of the defendant) met with an accident. At that time, he was in the "building of worship" of the defendant, performing his duties as a scoutmaster of a troop of Boy Scouts sponsored by the aforementioned club. It is agreed that defendant is a charitable institution organized not for pecuniary profit. In his complaint, the plaintiff avers that his accidental injuries were sustained as a proximate result of the negligence of the defendant. In the answer, negligence is denied and the defense of charitable immunity is raised, along with other affirmative defenses. That immunity is the ground advanced in the defendant's instant motion for summary judgment.
Prior to the decisions in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); Benton v. Y.M.C.A., 27 N.J. 67 (1958), and Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), non-profit charitable institutions were *177 immune from liability for negligent conduct which resulted in injury to those who were considered beneficiaries thereof. (See exhaustive listing and discussion of cases by Jacobs, J. in Collopy, supra). However, due to a shift in social values and impulses, the Supreme Court of New Jersey overturned this long-standing legal concept and rendered such institutions liable for their negligence. From the date of these decisions, April 28, 1958, onward, the defense of charitable immunity was unavailable.
On July 22, 1958 the legislative branch of our State Government set forth its interpretation of the preferential treatment of conflicting social forces. It created a modified version of the pre-existing common law in this area by its enactment of L. 1958, c. 131; N.J.S.A. 16:1-48 et seq. The modification adverted to above is not vital here. Under the admitted state of facts, the plaintiff would be denied recovery under both the common law prior to its sweeping reversal in Collopy, supra, etc., and under the act of July 22, 1958. The question here presented is whether the Legislature effectively adopted a retroactive measure which would deprive the plaintiff of relief upon his complaint, which was filed on July 7, 1958  between the two mile-posts, during the period the Supreme Court decisions were in effect.
The parts of the act which are pertinent to the present dispute are in the title thereof and in its concluding sentence. The title of the act reads:
"An Act concerning corporations, societies and associations organized exclusively for religious, charitable or hospital purposes; providing that they shall not be liable to respond in damages, in certain cases; and providing for the application and operation of the act and for its retroactive operation to January 1, 1956." (Emphasis supplied)
The final sentence of the act provides:
"6. This act shall take effect immediately and shall expire on June 30, 1959."
Approved July 22, 1958.
*178 Therein lies the controversy. It is clear from the statement in this title that the Legislature intended to effect a retroactive change back to the state of the law as it existed prior to the Collopy decision, but an examination of the body of the act discloses no words executing such an intention.
Article IV, Section VII, paragraph 6, of the Constitution of 1947, requires that:
"The laws of this State shall begin in the following style: `Be it enacted by the Senate and General Assembly of the State of New Jersey.'"
Because of this, the labeling clause to a legislative enactment has been analogized to a tombstone. It merely indicates what lies below. State v. Greene, 33 N.J. Super. 497 (App. Div. 1955). However, the efficacy of the tombstone to alter the identity of the remains interred beneath it has been the subject of some confusion in New Jersey. The title operates so as to preclude a construction clearly beyond its scope, Samuel D. Wasserman, Inc. v. Klahre, 24 N.J. Super. 143, 147 (App. Div. 1952), St. John the Baptist Greek Catholic Church, etc. v. Gengor, 121 N.J. Eq. 349 (E. & A. 1937), Addotta v. Blunt, 114 N.J.L. 85 (Sup. Ct. 1934). It also is available as an aid to the resolution of ambiguities "* * * as to the meaning of the enacting clauses. * * *" Addotta, supra, 114 N.J.L. at page 88; Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956). However, the title of an act may not be employed in an attempt to expand the legislative operation beyond that which is in fact enacted. In Swede v. City of Clifton, 39 N.J. Super. 366 (App. Div. 1956), affirmed 22 N.J. 303 (1956), the court stated:
"* * * Although the title of an act will be recognized as casting some light upon the meaning of legislation, Pancoast v. Director General of Railroads, 95 N.J.L. 428, 429, 430-431 (E. & A. 1921), it is not to be used to expand or enlarge upon the plain meaning of the language employed. 1 Sutherland, Statutory Construction (3d ed., 1943), § 1720, p. 314. * * * We are *179 referred to no case which would support an attempt to construe a statute beyond its plain meaning because of the fact that the phrasing of its title was perhaps broader than the content of the statute itself. * * *" (39 N.J. Super. at pages 377, 378)
When there is added to this concept of statutory construction the evident judicial disfavor of giving retrospective application to a statute whose words do not clearly, strongly and imperatively demand it, Nichols v. Board of Education, Jersey City, 9 N.J. 241 (1952) the confusion disappears and the decision is further crystallized. Also, this case does not fall within the "legislative intent" exception of City of Newark v. Padula, 26 N.J. Super. 251 (App. Div. 1953), for the basic purpose of the act in question may still be effectuated. Retroactivity is not a requisite to the efficacy of this act, and so the promise of such in the title, without more, is of no effect.
A consideration of the format employed in other legislative acts is helpful in a proper determination of the issue presented here. For instance, when N.J.S. 2A:44-71 (L. 1957, c. 232), was adopted, the Legislature used the following language:
"2. This act shall take effect July 1, 1957." Approved Feb. 3, 1958.
Clearly, the Legislature, in the instant act, failed to similarly express itself, especially as to whether or not its provisions were to be effective retroactively. The past practice of the Legislature in enacting validating legislation is also brought to mind. See N.J.S.A. Val.:8-5.2 (L. 1958, c. 77). It may also be of some assistance to compare the language used by the Legislature when it enacted the Joint Tortfeasor's Contribution Law. In that act the Legislature provided:
"This act shall apply to all actions for contribution commenced, and to all judgments recovered, after the effective date hereof irrespective of the time of the commission of the wrongful act or acts by the joint tortfeasors * * *

*180 6. This act shall take effect immediately." Approved June 18, 1952.
N.J.S. 2A:53A-4; L. 1952, c. 335, p. 1075.
It is logical to conclude, therefore, that when the Legislature attempts to enact legislation of admittedly broad scope, affecting the legal rights of many parties, it will express its intention in the certain and tested method outlined above, especially in regard to the effective date of such proposed changes.
For the reasons stated above, the motion is denied.